UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MICHAEL STEVENSON,

       Plaintiff,                  CIVIL ACTION NO. 10-15096

vs.

                                   DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, Defendant's Motion For Summary Judgment (docket no. 9) be GRANTED and the instant complaint be dismissed as there is substantial evidence on the record that Plaintiff can perform a significant number of other jobs.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits on August 30, 2007 alleging that he had been disabled since February 1, 2006, at age 48, due to a nervous disorder, anxiety, substance abuse, and depression. (TR 43, 81, 100, 105). The Social Security Administration denied benefits. (TR 43). Administrative Law Judge John L. Christensen (ALJ) held a de novo hearing on November 5, 2009 and subsequently found that Plaintiff was not entitled to a period of disability and Disability Insurance Benefits because he was not under a disability within the meaning of the Social Security Act from February 1, 2006 through the date of the ALJ's January 7, 2010 decision. (TR 26-36). The Appeals Council declined to

review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.  Plaintiff's Testimony

Plaintiff was fifty-two years old at the time of the hearing and was considered a younger individual on his alleged disability onset date. (TR 13, 21, 34). He has a driver's license and is able to drive. (TR 13). He has a high school education. He was employed with General Motors for approximately thirty years, working much of that time as a foreman and general foreman of a production line. (TR 13-15). Plaintiff last worked in 2006 and left his job due to pressure and stress caused by depression, anxiety, and a panic disorder. (TR 15). He testified that he takes daily medication for his psychological problems and he avoids confrontation and public situations. (TR 16-17). He testified that he has not used alcohol since April 2007. (TR 17-18). Plaintiff testified that he feels stress and loses focus around authority figures. (TR 19).

#### B.  Evidence of Mental Impairments

Plaintiff received psychological treatment for recurrent moderate major depressive disorder from Wayne Swart, M.D. and Timothy Thomas, LPC at the Genesys Hillside Center for Behavioral Services from approximately January 2006 through April 2008. (TR 180-221, 242-49, 310-24). In February 2006, the month of alleged disability onset, Plaintiff reported to Dr. Swart that he was frustrated and angry with his work situation, but that otherwise he was doing relatively well. (TR 218). In the months that followed, Plaintiff repeatedly expressed frustration over his work situation and the fact that his employer would not permit him to return to work. Plaintiff denied alcohol abuse

or suicidal ideations. He informed Dr. Swart and Timothy Thomas that he was prepared to return to work. He reported feeling hopeful and positive, indicated that he was looking forward to hunting with friends, and he was anticipating an enjoyable Florida vacation with his wife. (TR 212-18). During this time it was observed that Plaintiff's grooming was good, he was stable, compliant with his treatment and medications, and he was making good progress. (TR 212-18). In October 2006 Plaintiff was noted to have made significant progress, with 80% improvement in presenting symptoms. He was found to be in good general health with no suicidal thoughts or depressive symptoms and was assigned a global assessment function (GAF) of 70. (TR 210).

In December 2006 Plaintiff was called back to work and put in a supervisory position in the maintenance department. (TR 202). Plaintiff reported that he was motivated to return to work, but felt that he was given insufficient training for a demanding job and he believed the company was trying to force him out. (TR 203). After a series of conflicts with his employer, Plaintiff was told not to return to work. (TR 202).

In January 2007, Plaintiff continued to report feeling anxious and frustrated over being unable to return to work. Plaintiff revealed that he learned through others that his management had blackballed him and were trying to get rid of him. (TR 199). He reported that he had occasional suicidal thoughts that he was able to control and difficulty sleeping. (TR 199). Timothy Thomas found Plaintiff to be in good general health, with major depressive disorder, and occupational, economic, and other psychosocial problems. Plaintiff was assigned a GAF of 65. (TR 200).

In February 2007 Plaintiff's primary complaint was again related to his work situation. Plaintiff reported that he was handling himself appropriately, he denied suicidal thoughts and substance abuse. Plaintiff claimed to have no panic attacks or moodiness. (TR 201). On March 22,

2007 Plaintiff saw Dr. Swart and agreed with him that he could return to work in a non-supervisory capacity, but reported that the situation with his employer was so chaotic that Plaintiff did not believe they had any job that he could presently handle. (TR 195). Dr. Swart noted that Plaintiff was relatively stable and he was no longer sure what he could do for Plaintiff from a psychological perspective. (TR 195).

On April 22, 2007 Plaintiff was admitted to the Genesys Regional Medical Center with a history of overdose of Xanax, suicide attempt, alcohol abuse and intoxication, acute respiratory failure and depression. (TR 143-46). Plaintiff reported feeling depressed, angry, and agitated over his work situation. (TR 145). He was discharged in satisfactory condition on April 25, 2007 with instructions to follow up with a psychiatrist. (TR 143).

On April 25, 2007 Plaintiff was admitted to Memorial Healthcare for evaluation following his suicide attempt. (TR 151). The report reveals that Plaintiff was initially noncompliant with his medications and minimized his drinking problem. Plaintiff reported feeling better after a family intervention in which he was confronted with his substance abuse issue. (TR 151-56). Plaintiff was diagnosed with major depression, moderate, chronic, and recurrent; generalized anxiety disorder; and alcohol and Xanax dependence, and was assigned a GAF of 55. (TR 151). At the time of discharge it was noted that Plaintiff was to continue substance abuse counseling. Plaintiff attended a substance abuse program at Brighton Hospital from May 2, 2007 through May 16, 2007. (TR 159-61).

On May 17, 2007, several weeks after Plaintiff's suicide attempt, Plaintiff presented to the Genesys Hillside Center for Behavioral Services with irritability, excessive worry and anxiety, and suicidal gestures. (TR 189). Up until this time Plaintiff had denied substance abuse problems, but

now reported to Timothy Thomas that he had an ongoing problem with alcohol abuse that he had not previously revealed. (TR 189). Timothy Thomas noted an exacerbation of presenting symptoms and assigned Plaintiff a GAF of 55. (TR 189-90). On July 19, 2007 Plaintiff reported to Dr. Swart that he was doing well. (TR 184). Plaintiff's affect was bright, although he continued to be frustrated with his work situation. Dr. Swart discussed Plaintiff's options with him and indicated that Plaintiff could return to work if his employer could find a non-supervisory position for him or one that would help him avoid some of the pressure he was formerly under. (TR 184).

On June 18, 2007 and August 3, 2007 Plaintiff was medically evaluated by Dr. Marvin Latchana, M.D. During the consultation Plaintiff's physical examination was unremarkable and Plaintiff reported that he was psychologically stable. (TR 168). At the August 3, 2007 evaluation, Dr. Latchana observed that Plaintiff has not had alcohol since April 23, 2007, has gone back to church, and is "a totally different person." (TR 168). Dr. Latchana recommended that Plaintiff follow-up in one year. (TR 169).

On September 5, 2007 Timothy Thomas of the Genesys Hillside Center for Behavioral Services noted that Plaintiff was 80% or more improved and had experienced significant progress, with no depressive symptoms, no suicidal ideations, no substance abuse, and only occasional periods of anxiety which Plaintiff was able to control. (TR 181). It was noted that Plaintiff appeared extremely relaxed and at peace, and was keeping busy caring for his elderly parents. Plaintiff was assigned a GAF of 75. (TR 181). Plaintiff was placed on retirement disability in December 2007.

In April 2008, Plaintiff was again seen by Timothy Thomas at Genesys Hillside Center for Behavioral Service. (TR 310). Plaintiff reported that his moods were good with no depressive symptoms and only occasional anxiety. He was compliant with his medication and treatment

recommendations and was future oriented. Additionally, Plaintiff was found to be highly involved and motivated in his therapy. Timothy Thomas opined that Plaintiff was making significant progress, with 80% or more improvement in presenting symptoms. Plaintiff was assigned a GAF of 70. (TR 310).

A psychiatric review technique form prepared by state reviewing psychologist Leonard Balunas, Ph.D. in October 2007 shows that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (TR 224-28). In addition, Dr. Balunas found that Plaintiff exhibited one or two episodes of decompensation. (TR 228).

In a mental residual functional capacity assessment, Dr. Balunas opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions. (TR 238). Additionally, Dr. Balunas found that Plaintiff was moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods of time. (TR 238). Plaintiff was also found to be moderately limited in his ability to interact with the general public and in his ability to respond appropriately to changes in the work setting. (TR 239). In all other mental work-related categories, Plaintiff was not significantly limited. Dr. Balunas concluded that Plaintiff was able to perform unskilled work involving one, two, or three step instructions with limited need for sustained concentration, minimal contact with the general public, and no more than occasional changes in the work setting. (TR 240).

## C.     Vocational Expert

The ALJ asked the Vocational Expert (VE) if there was work available for an individual of Plaintiff's age, education, and work experience who was limited to performing light work, with no

climbing of ropes, ladders or scaffolds, and no exposure to unprotected heights or unguarded hazardous machinery. (TR 21-22). Additionally, the ALJ limited the individual to simple, routine tasks in a low-stress environment, meaning minimal changes in the workplace, and no more than occasional contact with the general public. (TR 22). The VE testified that Plaintiff could perform unskilled, light jobs in the economy including dishwasher, housekeeper, and bench type assembly, totaling 17,100 jobs regionally. (TR 22). The VE testified that the descriptions of the jobs he provided in his responses were consistent with the Dictionary of Occupational Titles (DOT). (TR 22).

The ALJ added the additional limitation that as a result of depression and anxiety, as well as medication needed to control those conditions, the individual cannot sustain sufficient concentration, persistence and pace to perform even simple, routine tasks on a regular and continuing basis for eight hours a day, five days a week. (TR 22-23). The VE testified that these limitations would be work preclusive. (TR 23).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since February 1, 2006 and suffers from the severe impairments of shortness of breath, depression, and alcohol abuse, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 31-32). The ALJ found that Plaintiff had the residual functional capacity to perform light work, except with no climbing of ropes, ladders or scaffolds, with no exposure to unprotected heights or unguarded hazardous machinery, performing simple, routine tasks in a low-stress environment with minimal changes in workplace settings and no more than occasional contact with the general public. (TR 33). The ALJ determined that Plaintiff is not able

to perform his past relevant work, but he is able to perform a significant number of jobs in the economy and therefore he is not suffering from a disability under the Social Security Act. (TR 34-35).

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether he employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir.1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.1999).

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's residual functional capacity (RFC), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* (citations and internal quotation marks omitted).

**C.   Analysis**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ formulated an inaccurate hypothetical that did not accurately portray Plaintiff's moderate deficiencies in maintaining concentration, persistence and pace. Specifically, Plaintiff contends that the hypothetical posed to the VE addressed limitations in concentration, but failed to take into consideration the entire scope of his "moderate" limitations, including corresponding limitations in the ability to maintain persistence and pace on the job. (Docket no. 8, at p. 12).

The ALJ is required to present a hypothetical question that includes only those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779. When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). In other words, if the ALJ goes beyond the label a psychologist gives to a person in order " 'to develop a complete and accurate assessment' of the patient's mental impairment and possible work opportunities, a VE's reliance on that description is substantial evidence supporting a denial of benefits." *Adams v. Comm'r*, No. 10-10022, 2011 WL 63495, at *2 (E.D. Mich. Jan. 6, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001)).

There is no doubt that in some cases a reference only to simple, routine tasks in a low-stress environment may not adequately capture the plaintiff's moderate deficiencies in concentration, persistence or pace. *See e.g., Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011) (citing cases). However, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine and repetitive work, but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Id. See also Bohn-Morton v. Comm'r*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005); *Berkowski v. Comm'r*, 652

F.Supp.2d 846, 859-60 (E.D. Mich. 2009).

Here, Dr. Balunas assessed Plaintiff with moderate deficits in concentration, persistence or pace, but concluded that Plaintiff was not limited in his ability to perform activities within a schedule, sustain an ordinary routine without supervision, work in proximity with others without being distracted by them, and perform at a consistent pace without an unreasonable number and length of rest periods. (TR 238-39). At the conclusion of his report, Dr. Balunas summarized that Plaintiff is able to perform unskilled work involving one, two, or three step instructions with limited need for sustained concentration, minimal contact with the general public and no more than occasional changes in the work setting. (TR 240). The ALJ considered this evidence in addition to other record evidence showing that Plaintiff has done well with psychological treatment, has not received any recent psychological treatment, has consistently been assigned high GAF scores, has no real physical problems, and has no indication of ongoing drug or alcohol abuse. Additionally, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.

Notably, although Plaintiff claims that the ALJ did not adequately incorporate into the hypothetical question his moderate deficiencies with concentration, persistence or pace, he does not point to any objective medical evidence in the record that the ALJ overlooked. The ALJ considered the evidence before him and crafted a hypothetical that accurately portrayed Plaintiff's limitations. The Court should find that the ALJ's determination that Plaintiff has the residual functional capacity to perform a significant number of other jobs is supported by substantial evidence in the record.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 21, 2011       s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 21, 2011          s/ Lisa C. Bartlett
                                  Case Manager